STATE OF IOWA, Appellee, v. L. C. WARD, Appellant.

**GAME: Deer—Prohibition on Killing—Constitutional Right to Protect Property.** An owner of property may lawfully kill a deer
1 if such killing was reasonably necessary in order to prevent substantial injury to the property of such owner, even though the statute (Sec. 2551-a, Sup. Code, 1913) prohibiting the killing of deer contains no such exception. The right to protect property is a constitutional right.

**GAME: Deer—Title in State—Effect of Statute.** The statute (Sec.
2 2562-b to 2562-d, inclusive, Sup. Code, 1913) declaring the title to all wild game to be in the state and providing that the killing of any deer shall be under the authority of the state fish and game warden does not render unlawful the killing of a deer in order to prevent substantial injury to property, even though the consent of such warden to such killing was not obtained, the title of the state to the carcass being fully recognized by the defendant.

*Appeal from Pottawattamie District Court.*—HON. E. B.
WOODRUFF, Judge.

SATURDAY, MAY 8, 1915.

THE defendant was prosecuted under information charging him with unlawfully killing a deer. The defendant pleaded not guilty and a trial was had in justice court resulting in conviction. From this judgment, an appeal was taken by defendant to the district court. Upon trial had to the court without a jury, the defendant was again convicted and has appealed.—*Reversed.*

*Turner & Cullison,* for appellant.

*George Cosson,* Attorney General, and *Wiley S. Rankin,* Special Counsel, for appellee.

EVANS, J.—The record herein strongly suggests a purely moot case. As is usual in such a case, the arguments are more formal than zealous. There is much in the record to indicate that the alleged criminal act was committed for the very purpose of presenting a case and taking judicial opinion thereon. Needless to say, the courts are not friendly to moot cases. They are kept sufficiently busy with bona fide controversies. In view of the fact, however, that the defendant is under statutory punishment, we do not feel justified in wholly forsaking him at this stage of his experiment.

1. GAME: deer: prohibition on killing: constitutional right to protect property.

In the judgment of the district court was included the following finding:

"It appears that this case was brought as a test case to determine whether this defendant has a right to kill deer that are injuring and destroying his corn. It appears from the evidence that in the neighborhood of defendant's farm there are from 150 to 200 deer which range up and down the country adjacent to defendant's premises, and that for years they have eaten up and trampled down more or less of the defendant's standing grain and his corn after it has been cut and shocked, even when piled up in his barn lots; that de-

fendant has many times driven them away, but they have come back and have destroyed his crops to the amount of hundreds of dollars, and at last he shot one, not for the purposes of food or out of wantonness, but to have the question determined by the highest judicial tribunal of this state whether he is obliged to submit to the continuation of such damage. It appears from his own testimony that he has never asked the game warden of this state to kill or capture any of such deer as provided in Chapter 206 of the Laws of the Thirty-fifth General Assembly. It is the opinion of the court that the defendant had no right to kill the deer in question before he had asked protection from the game warden as seems to be afforded by such statute. Therefore and also for the purpose of having the matter determined the defendant is found guilty . . .''

The defendant was prosecuted under Secs. 2551-a and 2551-b of the Code Supplement. Such sections are as follows:

''2551-a. That it shall be unlawful for any person other than the owner, or person authorized by the owner, to kill, maim, trap, or in any way injure or capture any deer, elk, or goat except when distrained as provided by law.

''2551-b. Any person violating the provisions of this act shall be deemed guilty of a misdemeanor and be punished by imprisonment in the county jail for a period not exceeding thirty days or by a fine not exceeding one hundred dollars, or by both such fine and imprisonment.''

It will be noted that the prohibition of this statute is absolute and unqualified in its terms. The one question in the case is whether a person who kills a deer, elk, or goat is necessarily guilty of violating the statute regardless of the reasons for such killing. To put it in another way: Is it open to the defendant to justify an admitted killing by showing a reasonable necessity in defense of person or property?

The following, from the brief of counsel for the state, is

a sufficient indication of the circumstances of the killing complained of:

"This action is brought as a test case on stipulation as to facts in justice court. Defendant pleaded not guilty but admitted that he killed the deer. He alleged that the killing was done of necessity for the protection of his property.

"These deer, which are the property of the state, have selected the southwestern part of Iowa, particularly Pottawattamie County and vicinity, for their herding and living purposes for a number of years. There seems to be anywhere from 150 to 200 or more of them and they roam about at will. No ordinary lawful fence, such as the owners of property put up for their protection and the enclosure of their animals, is sufficient to keep this magnificent herd of deer off their farms. There is no question but that they go where they please and eat of such crops as they like. They will go up to an ordinary fence, and without any noticeable effort whatever, lift themselves gently and gracefully, and apparently glide over the highest fence and wander off into a field as if there had been no impediment whatever.

"Defendant, it seems, had driven off these animals several times but they came back into his yard and began eating fodder which had been stacked up near his place. The record shows conclusively that the deer which was killed by defendant attempted to harm no person; that it was simply eating of the fodder which is conceded to have been the property of defendant. Defendant claims that he was acting in his own right to protect his property and to keep the deer from injuring and destroying it."

It will be noted that the deer was killed not only while upon the defendant's premises but while he was actually engaged in the destruction of the defendant's property. Giving the testimony the fullest credence, the deer was one of great voracity. He was capable of doing and was threatening to do great injury to defendant's property.

By way of analogy, we may note that the plea of reasonable self-defense may always be interposed in justification of the killing of a human being. We see no fair reason for holding that the same plea may not be interposed in justification of the killing of a goat or a deer. The right of defense of person and property is a constitutional right (Art. 1, Sec. 1, Constitution of Iowa), and is recognized in the construction of all statutes. If in this case it was reasonably necessary for the defendant to kill the deer in question in order to prevent substantial injury to his property, such fact, we have no doubt, would afford justification for the killing. *Aldrich v. Wright*, 53 N. H. 398, 16 Amer. Rep. 339.

We do not presume to pass upon the weight of the evidence tending to prove the fact of reasonable necessity. It is sufficient to say that the evidence would have sustained such a finding if made by the trial court. The case was tried below on the theory that such defense was not available.

It will be noted that the act of killing, as contended by defendant, was wholly defensive and preventive. Whether a deer may be lawfully killed today by way of retaliation for the damage wrought by it yesterday, or whether it may be so killed by way of reprisal for damage wrought or threatened by other deer, are questions not involved herein, and we do not purport to pass on them.

II. The conclusion of the trial court was based in part upon the provisions of Chapter 206, 35 G. A. If there was in fact any violation of such statute by the defendant, it was

2. GAME: deer: title in state: effect of statute. not charged in the information. Furthermore, we see nothing in such statute which interposes any obstable in the way of defendant's justification. Such statute is amendatory to Chapter 118, 34 G. A. Such Chapter 118, 34 G. A., as amended by Chapter 206, 35 G. A., is as follows:

"Sec. 1. The ownership and title of all wild game, animals, and birds, found in the state of Iowa, except deer in

parks and public and private preserves the ownership of which has been acquired prior to taking effect of this act and all fish in any of the public waters of the state, including all ponds, sloughs, bayous or other waters adjacent to any public waters, which ponds, sloughs, bayous, and other waters are stocked with fish by overflow of public waters, is hereby declared to be in the state, and no wild game, animals, birds, or fish shall be taken, killed, or caught in any manner at any time or had in possession, except the person so catching, taking, killing or having in possession, shall consent that the title to said wild game, animals, birds, or fish, shall be and remain in the state of Iowa for the purpose of regulating and controlling the use and disposition of the same after such catching, taking, or killing.

"Sec. 2. The catching, taking, killing, or having in possession, wild game, animals, birds, or fish at any time, or in any manner, or by any person, except as provided in section one hereof shall be deemed a consent of said person that the title of the state shall be and remain in the state for said purpose of regulating the use and disposition of the same and said possession shall be consent to such title in the state.

"Sec. 3. When it shall become necessary in the opinion of the state game warden or his deputies to kill or capture any deer now running at large within this state, it shall be done under the authority and direction of the state fish and game warden, who shall distribute such deer so killed or captured within this state and the expense of said killing or capture and distribution shall be paid by the person receiving such deer."

The purpose of the foregoing was to establish title in the state to all wild game whether dead or alive. This title was fully recognized by the defendant at every step. No attempt was made by him to appropriate or conceal the carcass of the slain deer. On the contrary, he immediately notified the public authorities and tendered the carcass to the appropriate officer.

We think, therefore, that the defendant was entitled to make an issue of fact on the question of justification as already indicated. The judgment of conviction must therefore be—*Reversed.*

DEEMER, C. J., PRESTON and SALINGER, JJ., concur.