## Commonwealth v. Grove

R. *Merle Heffner*, for Commonwealth.

*Richard W. Linton*, for defendant.

HIMES, P. J., October 23, 1967.—There is before the court for disposition defendant's appeal from his conviction before a justice of the peace on a charge of "possessing parts of a deer unlawfully taken contrary to the provisions of section 701 of the Act of June 3, 1937, P. L. 1225 as amended": 34 PS §1311. 701.

The court finds the following facts:

1. Defendant, George Grove, 64 years old, on and for many years prior to October 8, 1966, owned and resided upon a farm in Penn Township, Huntingdon County, Pa., which farm was cultivated by defendant and members of his family, as a means of gaining a livelihood.

2. For many years, cultivated crops on defendant's farm had been damaged and destroyed by deer.

3. On October 8, 1966, defendant's son, who was a member of defendant's family actually residing upon and regularly assisting in the cultivation of defendant's farm, killed a deer when the animal was engaged in material destruction of cultivated crops on the farm, and the killing was reasonably necessary to protect defendant's property.

4. The same day the deer was killed, a report of the killing was made to the game authorities, as required by law.

5. At the time of the killing of the deer, defendant's land was posted by signs which read: "Positively No Hunting Without Written Permission—George H. Grove and Mildred E. Grove, Owners".

6. No salt lick, bait or artificial means were used at any time to lure animals on to defendant's land.

7. On October 10, 1966, defendant possessed parts of said deer on his farm.

## DISCUSSION

Insofar as it relates to this prosecution, the relevant portion of section 701 of the Game Law provides as follows:

"It is unlawful for any person . . . to have in possession . . . any game, or any part thereof, that has been unlawfully killed or taken ".

The basic question is whether the deer had been unlawfully taken or killed.

Article I, sec. 1, of the Constitution of Pennsylvania provides as follows:

"All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness".

Insofar as the Act of Assembly, set forth in 34 PS §1311.724, purports to deprive a farmer of the right so to protect his cultivated crops unless his "lands are open to public hunting", it violates article I, sec. 1, of the Constitution of Pennsylvania. Under and by force of the Constitution, the owner of land has an inherent and indefeasible right to destroy deer when reasonably necessary to protect cultivated crops which are his property.

Further, to require a landowner to open his lands indiscriminately to the general public for hunting purposes, thereby exposing his fences and valuable timber to the hazards of fire created by inexperienced and at times semi-inebriated cigarette, cigar or pipe-smoking hunters, his crops to damage, and his family to the hazards of random shots from high powered rifles, with no provision for compensation, is not only unfair, but approaches the taking of private property without just compensation.

Article I, sec. 10, of the Pennsylvania Constitution provides, in part: ". . . nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured".

In reaching this conclusion, the court is not unmindful of the repeated pronouncements of our appellate courts to the effect that there is a strong presumption in favor of the constitutionality of acts of the legislature. See opinion of Judge Watkins of the Superior Court, in the case of Matter of John Williams and Ardry Jones: Williams Appeal, 210 Pa. Superior Ct. 388.

This court rejects the Commonwealth's contention that the police power supports such legislation. Undoubtedly, the rights of individuals are subject to reasonable regulation by the legislature, under the police power, but police power has its limitations. The police power cannot be used indiscriminately as a wedge to emasculate a constitutional provision. In Commonwealth ex rel. Schnader v. Liveright, 308 Pa. 35, at pages 80-1 (1932), the court said:

"But, while courts will not hesitate to sustain a proper exercise of the police power under circumstances of extraordinary nature (as for instance where its exercise is necessary for the preservation of government), even though a positive constitutional

provision stands in its way, the circumstances which call for such exercise must definitely and clearly appear, and the exercise must be in furtherance of a clearly defined major object of government. These instances are rare; therefore, the power in this respect has been sparingly sustained . . . If it was necessary to resort to the police power to sustain the present act, we would decide against such use".

In every reported decision on this subject in Pennsylvania, it has been held that the owner of real estate has an indefeasible right to destroy deer engaged in the actual destruction of his crops, and that legislation which undertakes to deprive him of that right contravenes the Constitution.

The Pennsylvania Constitution was construed by the late Judge Gillan, in the case of Commonwealth v. Carbaugh, 45 Pa. C. C. 65 (1917). In that case, a female deer, while tramping down and eating wheat on the farm of defendant, was shot and killed by defendant. As in this case, defendant admitted the intentional killing, and the Commonwealth admitted that the deer was engaged in injuring defendant's crops at the time of the killing. The Act of Assembly of April 21, 1915, P. L. 146, sec. 5, in force at that time, provided, among other things, as follows: ". . . and it shall be unlawful for any person at any time to shoot or wound or kill . . . a female deer . . . found in a wild state in this commonwealth".

The question squarely before the court was whether, under the Constitution, the owner of property has an inherent and indefeasible right to destroy deer found in the actual destruction of his property. The court there stated:

". . . If the legislature had the constitutional power to enact this part of the bill and if they meant by that to prevent the killing of wild deer while engaged in

the destruction of the property, then this defendant is guilty".

The court further stated:

"We hold that when a wild deer is caught in the destruction of property, the owner of that property has an inherent and indefeasible right to destroy the deer".

In the case of Commonwealth v. Gilbert, 5 D. & C. 443 (1924), defendant was convicted before a justice of the peace of killing a doe deer. The testimony disclosed that the deer was not, at the time defendant killed the animal, actually engaged in doing damage. The Act of May 24, 1923, P. L. 359, secs. 705 and 720, made it unlawful to kill a female deer. In that case the court said:

"We now hold that the owner of real estate has an indefeasible right to destroy a deer when necessary to protect his crop. Any legislation which undertakes to deprive him of that right contravenes the Constitution . . . The killing of the deer was because of past depredations and the well-founded apprehension of what would happen in the future, and the defendant was justified in killing".

The conclusion in the Gilbert case was approved by the late Judge Fleming, of Centre County, in the case of Commonwealth v. Haugh, 12 D. & C. 795 (1928), in the following language:

"We fully concur in the learned judge's conclusions that 'the owner of real estate has an indefeasible right to destroy deer when necessary to protect his crops' and that 'any legislation which undertakes to deprive him of that right contravenes the Constitution' ".

In 1929, the late Judge Hipple held that "While . . . the Commonwealth has the sole right to preserve, protect, and regulate the method, time, and manner of hunting and killing deer, yet any such legislation is always subject to the rule that it must not expressly

or impliedly be forbidden by the Constitution", expressly ruling that section 724 of the Game Law of June 3, 1937, P. L. 1225, is unconstitutional, insofar as it attempts to confine the right of a property owner to kill deer actually engaged in the destruction of his property to persons raising crops for a livelihood: Commonwealth v. Riggles, 39 D. & C. 188 (1939) (Clinton County). See, also, unreported opinion in the case of Commonwealth v. John Corcelius, September sessions, 1953, no. 10, (Huntingdon County); Commonwealth v. McGowan, 9 D. & C. 2d 398 (opinion by Judge McCreary, of Beaver County); Commonwealth v. Bloom, 21 D. & C. 2d 139 (1959) (Clearfield County); and Commonwealth v. Stitler, 22 D. & C. 2d 240 (1960).

For almost a century, the appellate courts of other States have reached the same conclusion. See Aldrich v. Wright, 53 N. H. 398 (1873); State v. Burk, 114 Wash. 370 (1921); State v. Ward, 170 Iowa 185, 152 N. W. 501 (1915); Cross v. State of Wyoming, 370 P. 2d 371 (1962). These authorities hold that a person may kill a wild animal, even though contrary to the laws of the State, if such animal is destroying his property and it is reasonably necessary to kill the animal. Attention is invited to the comprehensive and persuasive opinion of the court in the Cross case.

In the instant case, at the time the deer was killed, the animal was destroying defendant's cultivated crops; the destruction was not trifling, not inconsequential, not slight, not technical; it was material. In the American College Dictionary, the word "*material*" has been defined as follows:

"Of substantial import, of much consequence, or important".

Under the circumstances, the killing was reasonably necessary to protect the cultivated crops on defendant's farm. At the time of argument, Common-

wealth's counsel conceded that if defendant's land had been open to public hunting, defendant could not be guilty of the offense charged.

In this case, the conduct of defendant was not stealthy. The killing of the deer was reported promptly, as required by law. There is neither a scintilla of evidence nor the slightest odor suggesting that the animal was killed for any purpose other than to protect cultivated crops from material destruction. It is believed that to convict this defendant of the offense charged would be a miscarriage of justice. Both reason and precedent support an acquittal.

And now, October 23, 1967, after hearing de novo, the court finds and adjudges defendant, George Grove, not guilty of the offense charged. Costs on County of Huntingdon.